IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> Baltimore Field Office ) <br> 31 Hopkins Plaza, 14th Floor ) <br> Baltimore, Maryland 21201 ) <br> Baltimore City ) <br> ) <br>     Plaintiff, ) <br> v. ) <br> ) <br> SINCLAIR BROADCAST GROUP, INC., ) <br> 10706 Beaver Dam Road ) <br> Cockeysville, Maryland 21030 ) <br> Baltimore County ) <br> ) <br>     Defendant. ) <br> ) <br> _____ ) | CIVIL ACTION NO. 1:22-cv-02477 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

NATURE OF THE ACTION

The U.S. Equal Employment Opportunity Commission brings this action against Defendant Sinclair Broadcast Group, Inc. to remedy violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race, and to provide appropriate relief to Charging Party Jonae Rollins.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The

1

employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

2. Plaintiff, the Equal Employment Opportunity Commission (the Commission or the EEOC), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

3. At all relevant times, Defendant Sinclair Broadcast Group, Inc. (Defendant or Sinclair), a Maryland corporation, has continuously been doing business in Cockeysville, Maryland, and has continuously had at least 15 employees.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

5. More than thirty days prior to the institution of this lawsuit, Jonae Rollins filed a charge with the Commission alleging violations of Title VII by Defendant.

6. On April 6, 2020, the Commission issued to Defendant a Letter of Determination finding that Defendant violated Title VII.

7. EEOC invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant with the opportunity to remedy the findings in the Letter of Determination.

9. EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. The Commission issued to Defendant a Notice of Failure of Conciliation dated March 26, 2021.

11. All conditions precedent to the institution of this lawsuit were fulfilled.

## STATEMENT OF CLAIMS

12. Jonae Rollins is a Black woman who worked for Defendant from December 2015 to May 31, 2018.

13. Defendant is a publicly traded telecommunications company headquartered in Cockeysville, Maryland.

14. In December 2015, Ms. Rollins began working for Defendant in the company's IT business unit. In April 2016, Defendant selected Ms. Rollins for a permanent IT job.

15. Ms. Rollins was qualified for the positions she held with Defendant.

16. Ms. Rollins performed various tasks including but not limited to assisting system users, researching system issues, creating and updating service requests, and completing other assigned IT projects.

17. Defendant paid Ms. Rollins less than it paid employees who are not Black to perform similar work. For example, a White employee who worked with Ms. Rollins was paid more than Ms. Rollins even though they performed similar work and was granted employment opportunities that were not offered or granted to Ms. Rollins. Further, Ms. Rollins was assigned work that White employees were either unavailable to perform or could not perform successfully; nevertheless, Ms. Rollins was paid less than the White employees to perform such work.

18. During the course of her employment and beginning approximately six months after Defendant selected her for a permanent position, Ms. Rollins was required to perform higher-level tasks and to assume increased responsibility, but she was not offered a promotion or pay increases commensurate with the elevated roles and responsibilities. Defendant treated similarly situated workers who are not Black more favorably.

19. In May 2017, Defendant selected Ms. Rollins to serve on an implementation team for a cloud-based financial system.

20. Notwithstanding Ms. Rollins' selection for the implementation team, she was not offered a promotion and her salary was not increased. By contrast, employees on the implementation team who are not Black were paid more than Ms. Rollins, granted employment opportunities not offered or granted to Ms. Rollins, and otherwise treated more favorably than Ms. Rollins.

21. Defendant subjected other Black employees to less favorable treatment compared to those outside their protected class, including paying them at a lower rate or within a lower range despite their superior experience and/or qualifications.

22. Ms. Rollins' work on the implementation team was outstanding. Ms. Rollins maintained an above-average workload while working on the team, worked above-average hours, and was required to meet tight deadlines.

23. During the course of her work on the implementation team, Ms. Rollins was advised to complete work for which another team member, who is not Black, was responsible. The justification provided to Ms. Rollins for why she had to complete that work was that the other team member's job performance had declined so substantially that management no longer had confidence in their ability to complete the work. Although Ms. Rollins was given additional

work and responsibility on the implementation team, Defendant did not offer Ms. Rollins a promotion nor did the company increase her salary. At least one other employee who is not Black and who also worked on the implementation team was paid more than Ms. Rollins to perform similar work.

24. In 2017, Ms. Rollins advised Defendant that she was underpaid for the work she performed and that she had been denied a promotion and/or pay increase commensurate for her roles and work performed. Ms. Rollins advised Defendant that it was inequitable for the company to continue increasing the complexity of her work and responsibility without fair compensation.

25. After Ms. Rollins' complaint described in Paragraph 24, Defendant acknowledged that her job title should be changed to reflect the higher-level work that she had been performing but the company proposed to pay her less than others were earning to perform similar work. Defendant continued to pay Ms. Rollins less than at least one White employee who performed similar work and held the same job title; by February 2018, that employee was earning at least $7,500 more in salary than Charging Party. During this period, a co-worker told Ms. Rollins that company pay records showed she was the lowest paid employee on the team.

26. In 2018, Ms. Rollins renewed communication with management about her inequitable pay and treatment. At no time did management tell Ms. Rollins that she was being denied a pay increase (or any other opportunity or benefit of employment) because of allegedly poor job performance, because the work she performed did not warrant a pay increase, or any other justification tied to Ms. Rollins' performance or conduct. To the contrary, Ms. Rollins was advised that there was support for increasing her pay, and management suggested that a pay raise

would be processed soon. Nevertheless, the company did not increase Ms. Rollins' pay nor did it advise her when she could expect to receive any raise or resolution of the pay disparity.

27. In February 2018, Ms. Rollins elevated her complaint to Defendant's Human Resources staff and asked to speak with a company Equal Employment Opportunity representative.

28. In response to Ms. Rollins' complaint, HR advised Ms. Rollins that the company would conduct a compensation study to compare her salary to that of similar workers in the external labor market.

29. The compensation study described above showed that Ms. Rollins was underpaid as compared to those the compensation study analyst selected as comparators in the external market. Nevertheless, Defendant did not increase Ms. Rollins' pay or remedy the disparity.

30. After Ms. Rollins complained to Defendant's Human Resources staff, as described above, the company told Ms. Rollins that it would not consider raising her pay until an unknown future date. Following her complaint to HR, Ms. Rollins was advised that the company would not consider whether to give her a raise until at least the next budget cycle, which begins in September 2018, because of company restructuring; more specifically, Defendant said it would not consider whether to raise her pay until after a new executive joined the company. According to Defendant, the new executive did not join the company until June 2018.

31. In April 2018, a White coworker complained to Ms. Rollins that she was being underpaid. Although the coworker already was paid more than Ms. Rollins for performing similar work, she insisted that Defendant should increase her salary. The coworker said she was going to talk to management about increasing her pay; if granted, such a raise would increase the disparity between the salaries paid to Ms. Rollins and the coworker. Ms. Rollins observed the

coworker leave her desk to meet with management. Shortly thereafter, Ms. Rollins learned that Defendant increased the coworker's salary to $70,000, which was at least $21,000 more than the company was paying Ms. Rollins, and that Defendant granted the coworker other employment benefits such as a 100% telework schedule.

32. After the events described in Paragraph 31, Ms. Rollins again tried to resolve the pay disparity and inequitable treatment. As of May 2018, Ms. Rollins' previous efforts to resolve the disparities had resulted in unfulfilled assurances that there was support for a pay increase; an HR complaint and request for EEO assistance that resulted in no pay increase; a compensation study that resulted in no pay increase; notification of restructuring limitations that precluded raises until a new executive's arrival (at an unknown future date); and the granting of a substantial salary increase to a White coworker who held the same job title and performed similar work as Ms. Rollins.

33. On or about May 14, 2018, Ms. Rollins wrote a letter to Defendant in another effort to resolve the pay inequity in light of the coworker's substantial pay increase. In the letter, among other things, Ms. Rollins advised Defendant that if the company did not take steps to resolve the pay disparity, she would be compelled to resign effective May 31, 2018. Ms. Rollins provided similar notice to Defendant's HR staff, explaining that she was paid less than her colleagues, that her pay was discriminatory, and that she would be compelled to resign if the company refused again to resolve the disparity.

34. After Defendant received the letter described in Paragraph 33, the company decided that it no longer wanted to employ Ms. Rollins.

35. After Ms. Rollins submitted the notices described in Paragraph 33, Defendant, through its acts and/or omissions, subjected her to continued discrimination including

terminating or constructively discharging her. For example, after receiving Ms. Rollins' notices, and otherwise being aware of her repeated attempts to resolve the disparities and of the recent substantial salary increase granted to a White coworker, Defendant chose not to give Ms. Rollins any pay increase; did not provide Ms. Rollins with any information about when she could expect an increase, if ever; failed to resolve the pay complaints or address with Ms. Rollins the status of her prior pay complaints; provided no explanation to Ms. Rollins concerning the disparities; did not confer in good faith with Ms. Rollins about what, if anything, the company could do to address her concerns or to avoid her separation from the company including discussing potential increases, setting a schedule to discuss potential increases, or conferring about dates when Ms. Rollins could expect action to be taken concerning her pay; and decided not to retain Ms. Rollins in any capacity.

36. After Ms. Rollins complained of pay disparity and inequitable treatment, Defendant engaged in acts or omissions that were intended to communicate to her that the company would not remedy the pay disparities at issue and to persuade her to resign in lieu of continuing to work in an environment where she would not be paid for increasingly complex job tasks or expanded responsibilities. Based on the history of Ms. Rollins' employment, as described above, Defendant's acts or omissions were so intolerable that a reasonable person would resign. Defendant ignored working conditions that were so intolerable that a reasonable person facing those conditions would feel compelled to resign rather than submitting to continuing inequities.

37. At no time did Defendant issue to Ms. Rollins an unsatisfactory job evaluation, a performance improvement plan, nor did the company take disciplinary action against her or otherwise notify her that her job performance or conduct was unsatisfactory.

38. At no time did Defendant tell Ms. Rollins that the company would not raise her pay because she did not perform job tasks that would warrant an increase; that the quality of her work did not warrant an increase; or any other justification based on her performance or conduct.

39. Ms. Rollins was qualified for jobs she held with Defendant. As set forth above and supported by additional facts concerning the disparate treatment of Defendant's employees, Defendant violated Title VII when it subjected Ms. Rollins to disparate treatment because of her race, Black, including denying her employment opportunities and pay as compared to similarly situated employees outside her protected class; refusing to increase her pay at all following her final pay complaint; deciding not to continue employing her in any position, despite knowledge of the pay disparity and the company's failure to resolve it, a compensation study that supported increasing her pay, the disparate treatment of at least one White coworker, and Ms. Rollins' plans to resign if the disparities were not remedied; and/or constructively discharging Ms. Rollins.

40. The alleged reasons asserted for Defendant's conduct, including the failure to offer Ms. Rollins a promotion and pay commensurate with the complexity of work she performed and scope of her responsibilities, are a pretext.

41. The effect of the practices complained of above has been to deprive Ms. Rollins of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

42. As a result of the violations described above, Ms. Rollins was deprived of wages and employment benefits and suffered other harm that is compensable under Title VII, including but not limited to: (a) lost wages that accrued during periods of time when Ms. Rollins was paid less than employees outside her protected class who performed similar work; (b) lost wages

resulting from Defendant's failure to promote Ms. Rollins or pay her commensurate with the complexity of work she performed and the scope of her responsibilities; and (c) lost wages resulting from the termination of Ms. Rollins' employment with Defendant.

43. The unlawful employment practices complained of above were intentional.

44. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Rollins.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Sinclair Broadcast Group, Inc., its officers, successors, assigns, and all persons in active concert or participation with Defendant, from discriminating because of race, including engaging in disparate treatment, depriving persons of compensation, opportunities, and other benefits of employment, and from engaging in any other employment practices that discriminate because of race.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons notwithstanding race and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant to make whole Jonae Rollins, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to front pay.

D. Order Defendant and to make whole Jonae Rollins by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make whole Jonae Rollins by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Jonae Rollins punitive damages for their malicious and reckless conduct, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

s/Debra M. Lawrence
Regional Attorney

s/Kate Northrup
Supervisory Trial Attorney

<u>s/Emily Datnoff</u>
Trial Attorney, Bar No. 29464
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
31 Hopkins Plaza, 14th Floor
Baltimore, Maryland 21201
Emily.Datnoff@eeoc.gov
Phone: (410) 801-6708
Fax: (443) 992-7880
